Statement.

## Wytheville.

FRY AND ANOTHER v. STOWERS.

JULY 25, 1895.

1. EVIDENCE—*Ancient Boundaries—Declarations—Admissions.*—Upon the question of ancient boundaries or corners, the declarations of deceased persons as to such boundaries or corners may be given in evidence, provided such persons had peculiar means of knowing the fact in question, and the declarations are not liable to the suspicion of bias from interest. Such are the declarations of the surveyor and chain-carriers engaged on the original survey, the owner of the tract, or of an adjoining tract calling for the same boundaries, tenants, processioners, and others possessed of accurate information of the fact. Admissions of a former owner are admissible in evidence, though he did not live on the land and perhaps never saw it. It is for the jury to determine the weight of the admissions under all the circumstances of the case.

2. EVIDENCE—*Declarations—Admissions.*—Declarations of a mere stranger to a controversy, having no interest in the matter, though made in the presence of a party, but not addressed to him, and to which no reply is required or made, cannot be given in evidence as an admission of such party.

Error to a judgment of the Circuit Court of Bland county, rendered December 8, 1893, in an action of ejectment, wherein the defendant in error was the plaintiff and the plaintiffs in error were the defendants.                    *Reversed.*

The opinion states the case.

*J. H. Fulton* and *Ro. O. French*, for the plaintiffs in error.

*I. H. Larew* and *M. Williams*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

· It became important during the trial of this case, which is
an action of ejectment, for the plaintiff in the court below
(the defendant in error here) to establish the southeastern and
the southern line of the grant under which he claimed.   To
do this the plaintiff himself was allowed to prove, over the
objection of the defendants, the declarations of one Josiah
Thompson as to where the corner and line in question were
located.   The action of the court in admitting such evidence
is made the ground of the first assignment of error.

The law is well settled in this State that evidence is
admissible to prove the declaration of a deceased person as to
the identity of a particular corner, tree, or boundary, provided
such person has peculiar means of knowing the fact in ques-
tion, as, for instance, the surveyor or chain-carriers who were
engaged upon the original survey, or the owner of the tract,
or of an adjoining tract calling for the same boundaries; and
so of tenants, processioners, and others whose duty or interest
would lead them to diligent enquiry and accurate information
of the fact; always, however, excluding those declarations
which are liable to the suspicion of bias from interest.   *Har-*
*riman* v. *Brown*, 8 Leigh 697 ; *Clements* v. *Kyle*, 13 Gratt.
at 477–8.

Josiah Thompson, whose declarations were allowed to be
proved in this case, was the son-in-law of James Deavor,
whose lands joined or lapped upon the lands claimed by the
plaintiff.   Thompson had no interest in the lands of Deavor,
and claimed no interest in his estate, as he and his wife had
been provided for before Deavor's death, and their lands were
located several miles distant. · The plaintiff testified that
Thompson told him that he had once carried the chain when
Deavor, his father-in-law, was having the lines of some of his
surveys run, "which one he did not and could not say, as

Deavor had so many "; that Thompson did not claim to have ever carried a chain around the Robinett grant or tract. Thompson was neither the surveyor nor a chain-carrier at the making of the original survey of the land whose corners and boundaries were in controversy, nor was he the owner of that tract, or any adjoining tract calling for the same boundaries. Neither does it appear that he had ever been a tenant upon, or engaged as a processioner of, the said land, nor was his situation in reference to it such as to make it his duty or his interest to make diligent enquiry, and to obtain accurate information, as to the corners or boundary-lines as to which his declarations were made. The most that can be said is that he was the son-in-law of an adjacent land-owner, and that he had been a chain-carrier upon some other survey.

His declarations are clearly not within any of the exceptions made in our decisions in favor of the admissibility of hearsay evidence, and we entirely agree with Judge Lee, when he says, in *Clements* v. *Kyle*, 13 Gratt., at page 478, that "from the perishable character of the land-marks in this country, evidence of hearsay as to particular facts may, under proper restrictions, be received upon a question of ancient boundary, yet such evidence should be carefully watched, because, from its very character, it may, in many or most cases, be impossible to meet or disprove it. There must always be some peril in departure from the broad general rules of evidence, and it should not be carried farther than required by the absolute necessities of the case. I think the rule is laid down sufficiently broadly in *Harriman* v. *Brown*, and I am not disposed to extend it in the least beyond the very terms in which it is there expressed."

The court erred in the admission of the declarations of Thompson, and for that error its judgment will have to be reversed.

It is also assigned as error that the court allowed the

declarations of one Wilkinson, under whom the defendant
claims, to be given in evidence. At the time Wilkinson made
the declaration in question he was the owner of the land, and
any admission he may have made while such owner, which
tended to show that his boundaries were located as the plaintiff
claims they are, was admissible evidence. *Reusens* v. *Law-
son*, 91 Va. 226. The fact that he did not live upon the land,
or that he perhaps had never seen it, did not affect the
admissibility of the evidence. It was proper for these facts,
together with all the circumstances connected with his admis-
sion, to go to the jury, and it was for them to give it such
weight as they deemed proper under all the circumstances of
the case.

The next assignment of error is raised by Bill of Excep-
tions No. 3, which is as follows:

" Be it remembered that on the trial of this cause the plain-
tiff, to further maintain the issue in this cause, after introduc-
ing the evidence as is set out in Bill of Exceptions No. 4, to
be read herewith down to the evidence of James Stowers,
then introduced said James Stowers to prove declarations of
Solomon Waddle, who was a son-in-law of James Deavor,
under whom defendant claims. To the introduction of this
testimony the defendant objected, but the court overruled the
objection, and thereupon the witness testified that he was at
a barn-raising at Michael Waddle's after the Deavor parti-
tion; that he saw Joseph Holston, a surveyor, and George
Deavor come in in the evening. Deavor had Holston to run
his land to see if he could get water. It was the land in con-
troversy. Solomon Waddle was present, and asked if he had
found water. He said ' No.' Then Solomon said: ' I knew
you wouldn't, for your patent don't take you there.' Solomon
Waddle, George Deavor, and Joseph Holston are all dead.
Holston was there several days surveying. To the ruling of

the court in permitting the witness to thus testify the defend-
ants excepted."

The declarations of Waddle were admissible, it is contended
by the plaintiff's counsel, upon two grounds—

First. That he was the son-in-law of James Deavor, under
whom the defendant claims, and that it was recently after the
partition of Deavor's lands amongst his heirs, and that he was
present when such partition was made, and therefore his situa-
tion towards the land was such that it rendered his declara-
tions admissible.

That they were not admissible on that ground is shown by
this opinion in disposing of the first assignment of error.

The other ground upon which it is claimed that they were
admissible is that they were made in the presence of George
Deavor, the then owner of the land claimed by the defendant,
and that if they were not true he ought to have denied them,
and, as he did not do so, he is presumed to have admitted
their correctness.

The bill of exceptions does not show clearly whether the
question of Solomon Waddle was directed to George Deavor, or
to the surveyor, Holston, nor whether the answer made was
the answer of Deavor, or the answer of Holston. If there
was a controversy between Waddle and Deavor as to the
boundary of the land in question, in which Deavor disparaged
his own title, that conversation was clearly admissible; but
if the conversation was between Waddle and the surveyor,
in Deavor's presence merely, and the remarks of Waddle were
not addressed to Deavor, his silence could not be considered
as an admission of the truth of Waddle's declaration, because,
if not addressed to him, it cannot be said to have called for a
reply.

Mr. Greenleaf says, in discussing this subject: "But, in
regard to admissions inferred from acquiescence in the verbal

statements of others, the maxim, *qui tacet consentire videtur*, is to be applied with careful discrimination." " Nothing," it is said, " can be more dangerous than this kind of evidence. It should always be received with caution, and never ought to be received at all unless the evidence is of direct declarations of that kind which naturally calls for contradiction—some assertion made to the party, with respect to his right, which, by his silence, he acquiesces in. A distinction has accordingly been taken between declarations made between a party interested and a stranger ; and it has been held that while what one party declares to the other, without contradiction, is admissible evidence, what is said by a third party may not be so. It may be impertinent, and best rebuked by silence ; but if it receives a reply, the reply is evidence." 1 Greenleaf's Evidence, sec. 199.

In *Larry* v. *Sherburne*, 2 Allen 34 *et seq.*, Chief Justice Shaw says : " It is true that there are cases where a party may be affected in his rights by proof of a silent acquiescence in the verbal statements of others. But such evidence is to be received and applied with great caution, especially where it appears, as in this case, that the statements are made, not by a party to the controversy, but by a stranger. There are many cases where the intervention of a third person may properly be deemed unnecessary, and his statements be regarded as immaterial and impertinent. To them no reply need be made, and no inference can be drawn from the fact that they are received in silence."

Upon the next trial, if it appears that the declarations in question were made in a conversation between Waddle and George Deavor, they should be admitted in evidence; but if it appear that Waddle was a mere stranger, having no interest in the matter, and that his conversation was with Holston, and not with Deavor, but merely in his presence, then the court should not admit his declarations in evidence.

Objection is made both to the form of the verdict, and the fact that it embraced land which the plaintiff admitted, and the record shows, was the property of the defendant. As the case must be sent back for a new trial, it is unnecessary to decide these questions, as they are not likely to arise on the next trial.

We are of opinion that the judgment complained of should be reversed, the verdict set aside, and a new trial awarded.

*Reversed.*